UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
           :
**JENNIFER JOHNSON**,
           :
                         Plaintiff,
           :    **MEMORANDUM DECISION AND**
                  – against –                 **ORDER**
           :
                                               22-CV-2936 (AMD) (JRC)
           :
**MOUNT SINAI HOSPITAL GROUP, INC.**
           :
                         Defendant.
           :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       The *pro se* plaintiff alleges the defendant, her former employer, discriminated and retaliated against her on the basis of a perceived disability. Before the Court is the defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14), and the plaintiff's motion to amend her complaint (ECF No. 18). For the reasons that follow, the defendant's motion is granted, and the motion to amend is denied as futile.

## BACKGROUND

       The plaintiff was a registered nurse in the defendant's emergency department from November 20, 2006 to September 27, 2021. (ECF No. 18 ¶ 15.) In March 2020, the defendant implemented measures to mitigate the spread of COVID-19; the defendant limited occupancy of the break room to three fully masked employees at a time, required employees to wear N-95 masks during their shifts, and to wear face shields when working with suspected COVID patients. (*Id.* ¶¶ 16-23; Johnson Aff. ¶¶ 11-23.)[1]

       The defendant updated its policies and procedures in June 2021, and required that all employees be tested for COVID before they could begin work. (ECF No. 18 ¶ 27; ECF No. 18-1

---

[1] Jennifer Johnson's affidavit is attached to her complaint. (ECF No. 18-1 (the "Johnson Aff.").)

at 10.) On June 5, 2021, the plaintiff refused to take a COVID-19 test before her shift and was sent home. (Johnson Aff. ¶ 14.) The plaintiff's June 12, 2021 and June 19, 2021 shifts were also canceled. (*Id.* ¶ 17.) The defendant sent the plaintiff the following "Warning Notice" on June 24, 2021: "Mount Sinai Queens enacted several steps to investigate, manage, and prevent further spread [of COVID-19]. One method of prevention included having everyone who was face-forwarding patients, be tested for COVID-19 . . . You refused to be tested on June 5, 2021, and therefore [were] sent home, as Mount Sinai Queens could not confirm whether you would test positive for COVID-19. This posed an increased risk of spreading COVID-19 to patients and other staff." (ECF No. 18-1 at 10.) The notice was a "final warning." (*Id.*) On July 31, 2021, Mount Sinai informed the plaintiff that beginning on September 1, 2022, employees would have to be vaccinated or tested weekly, and that employees who refused would be terminated. (ECF No. 18 ¶ 37; Johnson Aff. ¶ 20.) The defendant gave the plaintiff until September 13, 2021 to get vaccinated, but the plaintiff refused. (Johnson Aff. ¶ 21; *see generally* ECF No. 18.) On September 20, 2021, the defendant placed the plaintiff on unpaid leave, and terminated her on September 27, 2021. (Johnson Aff. ¶ 21; *see also* ECF No. 18-1 at 35.)

The plaintiff filed this lawsuit on May 16, 2022, claiming discrimination and retaliation in violation of Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"). She alleges that she was "regarded . . . as disabled with a contagious disease" and regarded "as impaired in [her] immune system and impaired in [her] respiratory system," regarded as "having COVID-19 or being prone to getting infected . . . because she is not vaccinated," as well as "perceived" as having a contagious disease. (ECF No. 18 ¶ 60; Johnson Aff. ¶¶ 2, 11, 25.) The plaintiff alleges that the defendant's COVID-19 policies did not include any provisions for employees with disabilities, and that she was treated differently than

vaccinated employees and unvaccinated employees with medical or religious exemptions. (ECF No. 18 ¶¶ 72, 75.) The plaintiff claims that the defendant subjected her to adverse employment actions including "segregating and isolating [her from other] employees; compelling her to submit to various medical interventions such as wearing masks over her face and getting 'PCR' tests; requiring her to get vaccinated as a new condition of employment, and threatening her with terminating her employment, and ultimately firing her." (*Id.* ¶ 86.) In addition, the plaintiff claims that the defendant retaliated against her because of her good faith refusal to comply with its COVID-19 procedures through "impos[ed] punitive measures and adverse employment actions." (*Id.* ¶¶ 85, 131-39.)

The plaintiff seems to claim both that she is actually disabled (*see, e.g.*, ECF No. 17 at 10 ("Plaintiff was qualified for the protection of the ADA because she notified her employer that she is a qualified individual with a disability and being regarded as disabled by her employer is making a record of her disability")), and that the defendant improperly characterized her as having a disability (*see id*. at 6 ("The plaintiff satisfied the criteria for the two prongs of the ADA, that she was regarded as having a disability and that her employer, the defendant, made a record of such disability by mis-classifying her as having an impairment that required her to comply with the COVID-19 policy.")). In any event, the plaintiff alleges that the defendant retaliated against her for her good faith refusal to comply with its COVID-19 policies. (ECF No. 18 ¶¶ 85, 102, 131, 134.)

On August 19, 2022, the defendant moved to dismiss the complaint. (ECF No. 14.) On September 14, 2022, the plaintiff filed her opposition to the motion to dismiss (ECF No. 17), and a separate motion to amend (ECF No. 18). The defendant filed its reply on October 3, 2022. (ECF No. 20.)

3

**LEGAL STANDARD**

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks, alterations and citations omitted).

Because the plaintiff is proceeding *pro se*, I construe her complaint liberally, and evaluate it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal quotation marks and citations omitted).

**DISCUSSION**

**I.      Motion to Amend**

The plaintiff moved to amend her complaint after the defendant filed its motion to dismiss the original complaint. The proposed amended complaint does not add new parties or claims. The defendant opposed the motion to amend in its reply to the plaintiff's opposition to

the motion to dismiss; the defendant maintains that the proposed amended complaint is not materially different from the original complaint.

"A district court has broad discretion in determining whether to grant leave to amend[.]" *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "One appropriate basis for denying leave to amend is that the proposed amendment is futile," and a proposed amendment "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

When a plaintiff seeks to amend a complaint while a motion to dismiss is pending, a court "may either deny [the] pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020). This approach "promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Id.*

If the proposed amended complaint "does not seek to add new claims or parties," and the opposition has had "a sufficient opportunity to respond to the new pleading, then, for purposes of procedural efficiency, the merits of the pending motion to dismiss ought to be considered in light of the proposed amended complaint." *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 139 (E.D.N.Y. 2017) (collecting cases); *see also Van Wade v. St. Paul Blvd. Fire Dist.*, No. 21-CV-6218, 2022 WL 486911, at *3 (W.D.N.Y. Feb. 17, 2022) (finding it made "particular

sense" to evaluate the defendants' motion to dismiss as applied to the plaintiff's proposed amended complaint where the allegations in the proposed amended complaint did not materially differ from the original complaint); *Rubio v. BSDB Mgmt. Inc.*, No. 19-CV-11880, 2021 WL 102651, at *6 (S.D.N.Y. Jan. 12, 2021) (applying the merits of the pending motion to dismiss to the proposed amended counterclaims where those counterclaims did not add new parties or claims and the opposing party had a sufficient opportunity to respond).

Accordingly, the Court construes the defendant's motion to dismiss "as if it were directed at the [proposed amended complaint]." *Kilpakis*, 229 F. Supp. 3d at 139-40. If the proposed amended complaint cannot survive Rule 12(b) scrutiny, the motion to amend will be denied as futile. *See id.*

## II. Discrimination

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). A plaintiff claiming disability discrimination under the ADA must allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [her] employer; (3) [she] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [she] suffered an adverse employment action; and (5) the adverse action was imposed because of [her] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); *Williams v. N.Y.C. Dep't of Educ.*, No. 18-CV-11621, 2020 WL 906386, at *3 (S.D.N.Y. Feb. 25, 2020).

Under the ADA, a "disability" is: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Williams v.*

6

*Geiger*, No. 18-CV-01398, 2020 WL 1304397, at *6 (S.D.N.Y. Mar. 19, 2020). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). A plaintiff is "regarded as" having a disability if she "establishes that [she] . . . has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A plaintiff has a "record" of a disability if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1).

The defendant argues that the plaintiff has not established a record of disability, or that Mount Sinai regarded the plaintiff as having a disability. (ECF No. 16.)

a. **Record of Impairment**

The plaintiff alleges that Mount Sinai made a record of her having a disability "by misclassifying the plaintiff as having an impairment that substantially limited one or more life activities including but not limited to thinking, working, eating, breathing, walking, communicating and others expressed in the ADA," and that the defendant "made such a record by adding the plaintiff's name to a list of employees who were 'unvaccinated' and then keeping an actual record of the same." (ECF No. 18 ¶¶ 146-47.) The defendant did not, as the plaintiff claims, record her as having an "impairment" that limited one of her "major life activities." Rather, following New York state law, the hospital required the plaintiff and all employees to get vaccinated against COVID-19, unless they received an exemption. (ECF No. 18-1 at 35-39; ECF No. 16 at 1, 8.)

7

The plaintiff acknowledges that the vaccination policy applied to all employees, and that it was implemented to prevent the spread of COVID. (ECF No. 17 at 6 ("The defendant adopted policies affiliated with the name 'COVID-19' and sought to impose them upon each employee, including the plaintiff, purportedly to prevent the spread of what it claims to be a deadly contagious disease. These policies were not adopted because of any legal duty . . . but solely to . . . prevent the spread of . . . COVID-19. These policies were imposed on every employee equally , . . ." ).) According to the plaintiff, however, the policy is evidence that the defendant misclassified all employees as having an impairment. (ECF No. 17 at 1 ("It is not rational to act as if everyone has a disability at the same time, and then impose medical interventions . . . ."); *id.* at 4 (The defendant "misclassifi[ed] each staff member and each parent [sic] as having an impairment that can only be cured by participating in the vaccination programs described in the regulations."); *see also* ECF No. 18 ¶ 58 ("[F]or clarity's sake [I] allege that the defendant's policy rested on the assumption that every employee, the plaintiff included, had or could have [COVID].").)

Other courts have rejected this argument, with good reason. A hospital does not "misclassify" employees—who are charged with taking care of vulnerable people—merely by requiring them to be vaccinated against a potentially deadly disease. Like the plaintiff in *Speaks v. Health Sys. Mgmt., Inc.*, No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022), the plaintiff here "was simply required to become vaccinated under the Company's COVID-19 policy applicable to all employees, which . . . plainly did not impair her ability to work (for example, for another company)." In rejecting an identical argument, the court in *Speaks* concluded that "inferring that the Company classified [the plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the defendant] considered all its

8

employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption." *Id.*; *see also Shklyar v. Carboline Co.*, No. 22-CV-391, 2022 WL 2867073, at *4 (E.D. Mo. July 21, 2022) ("[Plaintiff's] amended complaint shows that [her employer] classified [her] in the same way that it classified all of its RD&I employees. Inferring that [the employer] misclassified [plaintiff] as having a disability would therefore require inferring that [the employer] misclassified all of its RD&I employees as having a disability. Such an inference is not reasonable.").

As noted above, it is not clear whether the plaintiff is arguing that she actually had a disability, but in light of her *pro se* status, the Court reads the complaint liberally and construes the complaint as alleging that she had a "history of impairment." 29 C.F.R. § 1630.2(k). The plaintiff appears to allege more than one impairment, although she does not say what they actually are. Instead, she claims to have "conditions that contraindicate wearing a mask or limiting my oxygen or re-breathing my expelled bacteria."[2] (Johnson Aff. ¶ 9.) The plaintiff does not cite a medical diagnosis for her unnamed conditions or claim that there are medical records documenting the conditions.[3]

Even if the plaintiff had alleged a real impairment, she does not plausibly allege that she was substantially limited in any major life activity. 29 C.F.R. § 1630.2(j)(ii) (an impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population"). The plaintiff lists major life activities—

---

[2] The plaintiff appears to have lifted this language, as well as other parts of her affirmation, from the complaint filed in *Shklyar*. 2022 WL 2867073 (E.D. Mo. April 4, 2022).

[3] It is not clear whether the plaintiff is claiming that she notified the defendant of these conditions. In her response to the defendant's motion, she maintains that she "informed the defendant she was an individual with a disability and regarded as having a disability as it pertained to this policy." (ECF No. 17 at 6.) In the proposed amended complaint, however, the plaintiff alleges that she "refused to disclose her medical records." (ECF No. 18 ¶ 93.)

9

"thinking, working, eating, breathing, walking, communicating and others expressed in the ADA" (ECF No. 18 ¶ 146), but does not allege how her conditions—as yet unnamed—limited those activities. She objects to wearing masks and other protective gear; she says that "[w]earing N-95 masks at all times is cumbersome, they are uncomfortable and hot to wear. They make it difficult to breathe and I have often felt dizzy while wearing them. I experience difficulty concentrating and I have increased forgetfulness since wearing N-95 masks. The masks also make it difficult to communicate . . . When working directly with suspected COVID patients, I also have had to wear plastic eye shields and a face shield over the mask. The eye shields often become foggy and this makes it difficult for me to see. I have experienced anxiety, feelings of panic and claustrophobia while wearing full protective gear." (Johnson Aff. ¶¶ 11-12.) The plaintiff also alleges that the defendant's policy limiting the number of people in the break room makes her feel "isolated and segregated from [her] co-workers." (*Id.* ¶ 12.)

Even drawing all inferences in the plaintiff's favor, these claims are insufficient. *See Fitzgerald v. We Company*, No. 20-CV-5260, 2022 WL 952963, at *8 (S.D.N.Y. Mar. 30, 2022) ("[The plaintiff] makes no showing that [her] affliction is any worse than is suffered by a large portion of the nation's adult population . . . . Similarly, [her] statement that she is disabled in . . . cognitive functions, supported by nothing more than her own affidavit, is too vague, conclusory, and self-serving to create a triable issue of fact as to whether her anxiety causes substantial limitations in any major life activities." (internal quotation marks and citation omitted)); *cf. Konieczny v. New York State Div. of Parole*, 647 F. Supp. 2d 256, 261 (W.D.N.Y. 2009) ("An impairment cannot be demonstrated by bare evidence of a medical diagnosis: rather, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the

10

extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." (internal quotation marks and citation omitted)).

Moreover, the plaintiff's claims are significantly undermined by her apparent willingness to return to work if the defendant met the conditions she outlined in an email, including that the defendant would "confirm[] that she will suffer no harm," from the vaccination, and that "a fully qualified doctor" would take "full legal and financial responsibility for any injuries occurring to [her]."[4]  (ECF No. 18-1 at 27-28.)  The plaintiff concluded by declaring, "[o]nce I have received the above information and I am satisfied that there is no threat to my health[,] I will be happy to either accept the vaccine and/or be tested as indicated."  (*Id.*)

The allegations in the plaintiff's complaint are not sufficient to sustain an ADA claim. *See Cain v. Mandl Coll. of Allied Health*, No. 14-CV-1729, 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) ("Plaintiff's allegations merely track the language of the statute noting that her PTSD substantially limits one or more of Plaintiff's major life activities such as eating, sleeping, working, attending school or even participating in the basic functions of life, such as eating and sleep, employment, and education.  Vague, conclusory assertions without details on how her condition actually affects a major life activity are insufficient." (internal quotation marks and citation omitted)); *Ejaz Baluch v. 300 West 22 Realty, LLC et al.*, No. 21-CV-9747, 2023 WL 112547, at *5 (S.D.N.Y. Jan. 5, 2023) ("Allegations that merely track the language of the statute or [v]ague, conclusory assertions without details on how [a plaintiff's] condition actually affects a major life activity are insufficient to survive a motion to dismiss." (internal quotation marks and citation omitted)).

---

[4] The plaintiff further requested that the defendant confirm that her refusal would not "compromise [her] position" and that she would not "endure any more pressure to follow these mandates/guidelines," if she should have to decline what she characterized as "the offer of vaccination and/or wearing of a mask" and "testing because the health risks outweighed the benefits."  (ECF No. 18-1 at 28.)

### b. Regarded as Having an Impairment

Nor has the plaintiff plausibly alleged that Mount Sinai regarded her as having an impairment, because it is premised on her theory that the defendant viewed every employee as disabled. Thus, the plaintiff alleges that she is "regarded as" having a disability by "the defendant's 'COVID-19 Policy,' [which] regarded [her] as having COVID-19 or being prone to getting infected with COVID-19 because she is not vaccinated" (ECF No. 18 ¶¶ 57, 60), and that she was regarded as having "an impaired immune system and an impaired respiratory system." (Johnson Aff. ¶ 2; *see also* ECF No. 17 at 6 ("[T]he defendant's policies demonstrate that the defendant regarded the plaintiff as having this deadly contagious disease . . . .").) The plaintiff also alleges that the defendant classified her as "unvaccinated" (ECF No. 18 ¶ 118), and viewed her as having COVID-19, with an impaired immune system and respiratory system, because it required her to comply with its COVID-19 policies. As explained above, the plaintiff's claim is not reasonable. The defendant's COVID-19 policies were applicable to all of its employees, except those with a legitimate exemption, as required by law.

To the extent that the plaintiff means to argue that the defendant regarded her as disabled because it regarded her as having COVID-19, that claim also fails. Under the ADA, individuals are not "disabled" when they have conditions that are "transitory and minor," or conditions with an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B); *see also* Margaret C. Jasper, Legal Almanac: The Americans With Disabilities Act § 2.5 (2012) ("[A]n individual with epilepsy, paralysis, HIV infection, AIDS, a substantial hearing or visual impairment, mental retardation, or a specific learning disability is covered, but an individual with a minor, non-chronic condition of short duration, such as a sprain, broken limb, or the flu, generally would not be covered . . . . This employee is not protected by the ADA because, although he is 'impaired,'

12

the impairment does not substantially limit a major life activity because it is of limited duration and will have no long-term effect."); *see also Lundstrom v. Contra Costa Health Services*, No. 22-CV-6227, 2022 WL 17330842 at *5 (N.D. Cal. Nov. 29, 2022) ("Federal courts generally agree that a COVID-19 infection is not a disability." (collecting cases)).

Nor is the plaintiff's vaccination status a disability. The plaintiff cites no authority to support that position, nor is the Court aware of any. The decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses. *Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal choice by [the plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA."); *cf. Berquist v. Lynch*, 14-CV-295, 2015 WL 4876344, at *5 (E.D. Wash. Aug. 14, 2015) ("An individual suffers a disability when a physical or mental impairment substantially limits one or more major life activities. Neither party gets to choose when a disability begins." (citing *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998))). As the plaintiff appears to acknowledge, the defendant saw her refusal to be vaccinated as a threat to the health and safety of other employees and of patients. (*See* ECF No. 18-1 at 35 ("those who receive exemptions will have to undergo weekly PCR testing to help keep our patients and our Mount Sinai family safe"); *id.* at 10 ("In the end of May 2021, through early June 2021, there was a serious outbreak of COVID-19 at Mount Sinai Queens. Given the significant concerns of infecting our vulnerable patient population and staff, Mount Sinai Queens enacted several steps to investigate, manage, and prevent further spread."); Johnson Aff. ¶ 14 (the plaintiff had to take a COVID test "due to a COVID outbreak in the hospital").)

The plaintiff did not plausibly allege that the defendant misclassified her as having a disability or regarded her as disabled.  Accordingly, her discrimination claim is dismissed.

### III. Retaliation

"To state a claim for ADA retaliation, 'a plaintiff must allege that: (1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (alterations omitted) (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)).  The plaintiff alleges that "upon giving defendant notice that she was regarded as having a disability and that she was a qualified individual with a disability, the defendant began retaliating against [her]." (ECF No. 18 ¶ 131.)  She further alleges that the defendant retaliated against her for "exercising her rights under the ADA to refuse in good faith the defendant's 'COVID-19 Policy' measures" (*id.* ¶ 143) by "impos[ing] pecuniary measures [and] adverse employment actions . . . which included isolation, segregation, cancellation of shifts and therefore loss of income, uncomfortable working conditions, threats of termination, and ultimately, the termination of her employment" (*id.* ¶ 138).

The defendant, on the other hand, maintains that (1) the plaintiff does not allege that she was engaged in a protected activity; (2) the defendant's policy decisions were not directed at her, and thus could not have been retaliatory; (3) the plaintiff did not complain about the COVID-19 policies until June 2021, almost a year after they were adopted in July 2020; and (4) her termination in 2021 was too far removed from her complaints, which she made more than three months earlier in June 2021.  (ECF No. 16 at 6-7.)

14

Even assuming that the plaintiff could demonstrate that her opposition to the defendant's COVID-19 policies was "protected activity," she cannot show a causal connection between her opposition and her termination. While the plaintiff's refusal to comply with the defendant's COVID-19 policies was clearly the basis for her termination, the defendant adopted its policies before the plaintiff objected to vaccinations and masking.

The defendants implemented policies and procedures to mitigate the spread of COVID-19 in March 2020. (ECF No. 18 ¶ 16.) In June 2021, the defendant updated its policies and procedures to require all employees to be tested for COVID before they could begin work. (ECF No. 18 ¶ 27; ECF No. 18-1 at 10.) It was then that the plaintiff objected to the defendant's COVID-19 testing policies. (Johnson Aff. ¶¶ 14-18.) In July 2021, the defendant announced that starting on September 1, 2022, employees would have to get vaccinated or submit to weekly COVID testing, and that refusing to comply would lead to termination. (*Id.* ¶ 20.) It was not until the end of August that the plaintiff complained that she was being regarded as disabled. (Johnson Aff. ¶ 25; ECF No. 18-1 at 30-31.) Accordingly, she has not sufficiently alleged a causal connection between the so-called "protected activity" and the adverse action. *See Shklyar*, 2022 WL 2867073, at *6 ("Given that the adverse action taken against Shklyar was taken pursuant to policies that were implemented before Shklyar engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events."); *Speaks,* 2022 WL 3448649, at *6 ("[I]t is clear that the policy – which was undisputedly the grounds for Speaks' termination when she chose to remain unvaccinated – was enacted before Speaks spoke up in opposition to the vaccination requirement. Therefore, it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination."). Accordingly, the retaliation claim is dismissed.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is granted. The plaintiff's motion to amend is denied as futile.

Although courts in this circuit are generally reluctant to dismiss a *pro se* plaintiff's action without permitting leave to amend, it is appropriate to do so "[w]here it appears that granting leave to amend is unlikely to be productive." *Ruffolo*, 987 F.2d at 131. Because neither the plaintiff's original complaint, nor her proposed amended complaint, contain allegations or representations that suggest she could possibly state a cognizable claim for relief, granting leave to amend would be unproductive. Accordingly, the complaint is dismissed, and the Clerk of Court is directed to close this case.

**SO ORDERED.**

                                                           s/Ann M. Donnelly
                                                           _____
                                                           ANN M. DONNELLY
                                                           United States District Judge

Dated: Brooklyn, New York
        February 22, 2023